IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENELLE BASTIAN, CYNTHIA HAASE, JACQUELINE PELLEGRINO, SHEREA MAYER, TROY CABRAL, NATASHA SMACK, CHELEANE CLERKLEY, and NICOLE SHEER, individually and on behalf of others similarly situated individuals, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | No. 07 C 2069 |
| v. | ) ) | Judge Robert W. Gettleman |
| APARTMENT INVESTMENT AND MANAGEMENT COMPANY, AIMCO PROPERTIES, L.P., and AIMCO BETHESDA HOLDINGS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jenelle Bastian, Cynthia Haase, Jacqueline Pellegrino, Sherea Mayer, Troy Cabral, Natasha Smack, Cheleane Clerkley and Nicole Sheer, individually and on behalf of a conditionally certified class, have sued defendants Apartment Investment and Management Company, AIMCO Properties, L.P., and AIMCO Bethesda Holdings, Inc. (together, "defendant")[1] for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), alleging that defendants failed to pay "leasing consultants" for overtime work. Plaintiffs have moved for partial summary judgment seeking a determination that under the FLSA, defendant is the employer of 46 of the plaintiffs who worked as "leased employees" at defendant's contact center in Denver, Colorado. For the reasons explained below, plaintiffs' motion is granted.

---

[1] The parties have treated the two defendants as a single entity for purposes of the instant motion.

**FACTS**

Plaintiffs are 140 individuals who worked as leasing consultants for defendant's properties across the United States. The 46 plaintiffs who are the subject of the instant motion, (referred to by the parties as "leased agents" or "leased employees") worked out of defendant's contact center in Denver, Colorado, through three different staffing agencies.[2] At the call center, plaintiffs used defendant's equipment, email, and supplies to perform their jobs. The leased employee plaintiffs worked side by side with and performed the same functions as other leasing consultants who were directly employed by defendant. Plaintiffs were trained by defendant, and until February or March 2008 defendant maintained on site "coaches" who mentored all employees at the call center including the 46 leased employees. After February or March 2008, leased employees no longer reported to "coaches" employed directly by defendant. Defendant could not choose which of the staffing agencies' employees would work at the call center, and could not terminate a worker from the staffing agency, but could direct that a staffing agency employee no longer be placed with defendant. Defendant controlled staffing needs by indicating to the agencies the shifts that needed to be covered. Defendant distributed to the staffing agents the rates it would pay for its staffing needs. The agencies then selected which of its employees were qualified to fill the assignment and be paid within the rate set by defendant.

---

[2]There appears to be a dispute whether all of the 46 leased employees worked at the call center or whether some worked at home, after receiving the necessary software from defendants. Because the court concludes that defendant is a joint employer for all plaintiffs, this factual dispute is not material.

**DISCUSSION**

Plaintiffs have moved for partial summary judgment seeking a determination that under the FLSA defendant is an employer of the leased call center employees. A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

The FLSA defines employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively to effect Congress's remedial intent in enacting the FLSA. Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). The United States Department of Labor has promulgated regulations under the FLSA recognizing that an employee may have more than one employer under the statutes' broad definitions. See 29 C.F.R. § 791.2(a). The regulations further provide (§ 791.2(b)): that,

> "where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers during the work week, a joint employment relationship generally will be considered to exist in situations such as:
> (1)   there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

> (2) . . . one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) . . . the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Whether an entity is an employer for purposes of the FLSA turns on the "economic reality" of the working relationship. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 91961). The determination of an employment relationship "does not depend on . . . isolated factors but rather on the circumstances of the whole activity." Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). Courts have devised various tests to determine joint employment under the FLSA. The First and Ninth Circuits have applied a four fact-factor test. Bay State Alternative Staffing Inv. v. Herman, 163 F.3d 668, 675 (1st Cir. 1988); Bonnett v. Calif. Health and Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983). Others, including the Second Circuit, have established a less restrictive six factor test drawn from the Supreme Court's decision in Rutherford. Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 69 (2nd Cir. 2003).

The Seventh Circuit has never formally adopted any test whereby application of a specific set of factors would determine the issue of joint employment. Recently, however, in deciding an issue of joint employment under the Family and Medical Leave Act, the court applied FLSA case law, noting that the joint-employer regulation in the FLSA mirrors that in the FMLA. Moldenhauer v. Tazewell-Pekin Consolidated Comm. Ctr., 536 F.3d 640, 644 (7th Cir. 2008). Although indicating that the factors that the other circuits have used to analyze the amount of control an employer exercised over an employee were relevant to the determination of

4

a joint-employer relationship, it refused to hold that those were the only relevant factors or even the most important. Id. at 644 (emphasis in original).

Instead, the court held generally "that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending upon the specific facts of each case." Id. Defendant argues that the application of the Moldenhauer standard leads to a conclusion that it is not a joint employer. The court disagrees for a variety of reasons. First, in its brief defendant applies the various factors and basically comes to the conclusion that the leasing agencies should be considered plaintiffs' sole employer because they exert more control over plaintiffs. The Moldenhauer court however, rejected any comparison of the amount of control that each asserted employer exerted, in favor of holding that the joint-employer relationship exists whenever each alleged employer exercises control over the working conditions. Id. Indeed, the court relied in part on its decision in Reyes v. Remington Hybrid Seat Co., Inc., 495 F.3d 403, 407 (7th Cir. 2007), in which, interpreting whether a farm labor contractor was an employee or an independent contractor, it rejected the district court's method of simply adding up the factors that fell on either side of the equation and ruling for the side with the greater number. "A score of five to three decides a baseball game, but this regulation does not work that way." Id.

Second, the Moldenhauer court indicated that it was guided by the Sixth Circuit's opinion in Grace v. USCAR, 521 F.3d 655 (6th Cir. 2008). The plaintiff in Grace, much like the instant plaintiffs, worked for a staffing agency and was assigned to work at a design firm. At all times the plaintiff remained on contract with the staffing agency, receiving her pay and benefits from it. The design firm supervised the plaintiff's day-to-day activities and determined her salary and

5

hours. As the Moldenhauer court noted, the Sixth Circuit "found that a joint-employment relationship existed because both employers maintained control over the employee." Moldenhauer, 536 F.3d at 644 (citing Grace, 521 F.3d at 660-67). The court then contrasted the Ninth Circuit's opinion in Moreau v. Air France, 343 F.3d 1179 (9th Cir. 2003), which held that an airline that contracted for the provision of ground services at the airport was not a joint employer of the plaintiff because the airline did not maintain any authority to control the workers. It could not hire or fire employees, determine salaries or direct day-to-day activities. Instead, the airline only evaluated whether the contracted for services were supplied satisfactorily. Moldenhauer, 536 F.3d at 644.

Finally, as the Seventh Circuit noted, Reyes, Grace, and Moreau all "square perfectly" within the FMLA regulation that "'joint employment would ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer.'" Id. at 644-45 (quoting 29 C.F.R. § 825.106(b)). In both Reyes and Grace, the primary employer placed workers with the alleged secondary employer, "both employers maintained significant control over the employee and were found to be joint employers." Id. In Moreau, the alleged secondary employer had no actual control over the employee and no joint-employment relationship was found.

The instant case is much more like Reyes and Grace, than Moreau. The leasing agencies provide defendant with workers, but defendant determines the amount it will pay, including overtime, the total number of hours it needs filled, and provides the workspace and equipment. Defendant also had the ability to reject any of the agency employees it did not want at its facility. Finally, when working, the leased employees were under defendant's control and direction and

were treated exactly like defendant's contract employees performing the same job. In short, defendant maintained significant control over the working conditions of the 46 leased employees.

For these reasons, the court grants plaintiffs' motion for partial summary judgment and finds that defendant was plaintiffs' employer under the FLSA

## **CONCLUSION**

For the reasons set forth above, plaintiffs' motion for partial summary judgment that defendant is an employer under the FLSA is granted.

**ENTER:**   **October 21, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**